Guy VON DARDEL, et al., Plaintiffs,

v.

UNION OF SOVIET SOCIALIST REPUBLICS, Defendant.

Civ. A. No. 84–0353 AER.

United States District Court, District of Columbia.

March 9, 1990.

Jerome G. Snider, Davis, Polk & Wardwell, Washington, D.C., for plaintiffs.

Eugene Theroux and Thomas Peele, Baker & McKenzie, Washington, D.C., for defendant.

MEMORANDUM

AUBREY E. ROBINSON, Jr., Chief Judge.

In 1984, the half-brother and the legal guardian of Raoul Wallenberg brought suit against the Soviet Union to force that country to produce Mr. Wallenberg, or account for his whereabouts. The Soviet Union declined to enter any appearance in the action, and in 1985 plaintiffs obtained a default judgment. Relying upon five separate grounds, this Court, Barrington D. Parker, District Judge, found that the it had jurisdiction and venue over the Soviet Union under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1330 *et seq.*, and the Alien Tort Claims Act, 28 U.S.C. § 1350.

In June of last year, the Soviet Union entered a special appearance solely to con-

test jurisdiction, and immediately moved for relief from judgment by default and for a dismissal. The United States has filed a statement of interest in support of the Soviet Union's motion. Plaintiffs vigorously contest it. The Soviet Union and the United States rely principally upon the Supreme Court decision in *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989), handed down subsequent to this Court's jurisdictional ruling.

Primarily in light of *Amerada Hess,* but also on the basis of other subsequent case law, this Court now holds that it lacks subject matter jurisdiction in this case, vacates the default judgment, and dismisses the complaint.

## I. BACKGROUND

The Court's 1985 opinion explains the factual background to this case. *See Von Dardel v. Union of Soviet Socialist Republics,* 623 F.Supp. 246, 248–50 (D.D.C. 1985). Suffice to say that plaintiffs seek declaratory, injunctive and compensatory relief on behalf of Wallenberg, arising out of his unlawful seizure by Soviet authorities in Hungary in 1945, his subsequent detention, and his possible death.

Plaintiffs served their complaint upon the Soviet Union as required by the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1608(a)(4). The provision calls for service upon a foreign state through the United States Department of State. A packet containing plaintiff documents was served upon the Soviet Ministry of Foreign Affairs in Moscow, evidenced by a May 1, 1984 certificate filed by the Department of State with the Court. Initially, the Soviet Union neither answered the complaint, nor moved to dismiss on any ground. They made no appearance whatsoever. Instead, on April 19, 1984, the Soviet Ministry returned all documents to the United States Embassy in Moscow with a note asserting absolute sovereign immunity.

On October 15, 1985, acting upon plaintiffs' motion for a judgment of default, the Court examined the issue of sovereign immunity in great detail. Section 1604 of the FSIA provides that a foreign state is generally immune from suit in the United States under the doctrine of foreign sovereign immunity. Nevertheless, the Court determined that it possessed subject matter jurisdiction, granted plaintiffs' motion and entered a default judgment against the Soviet Union. The Court grounded its finding of jurisdiction on five separate bases.

First, it held that under the FSIA, sovereign immunity is an affirmative defense which must be specially pleaded. The Court concluded that the Soviet Union's assertion of immunity via diplomatic note did not suffice. Because the Soviet Union failed to appear, plead and prove immunity, the Court decided that the defense had been waived. *Von Dardel,* 623 F.Supp. at 252–53.

Second, the Court determined that in enacting the FSIA, Congress had not intended to preclude jurisdiction in the case of "clear violations of universally recognized principles of international law." *Id.* at 253–54. The Court concluded that the violation of Wallenberg's diplomatic status was such a violation, long recognized by the laws of the United States.

Third, the Court relied upon section 1604 of FSIA itself, which provides that application of the FSIA is "subject to existing international agreements to which the United States is a party at the time of enactment...." Citing the Vienna Convention on Diplomatic Relations and the 1973 Convention on the Prevention and Punishment of Crimes Against Internationally Protected Persons, the Court reasoned that immunity under the FSIA "conflicts with" and "thwarts" these treaties. According to the Court in 1985, "[u]nder § 1604, the immunity granted by the FSIA must be limited so as to avoid such a result." *Id.* at 254–55.

Fourth, the Court held that the Soviet Union had implicitly waived sovereign immunity by signing and ratifying treaties providing for human rights and diplomatic immunity. *Id.* at 255–56. Section 1605(a)(1) of the FSIA denies sovereign immunity to a state which has waived it "either explicitly or implicitly."

Fifth, and finally, the Court relied upon the Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350, as an independent statutory grant of subject matter jurisdiction over violations of international law.[1] *Von Dardel*, 623 F.Supp. at 256–59. The Court proceeded to enter Judgment in plaintiffs' favor.[2]

On April 28, 1986, plaintiffs moved for order holding the Soviet Union in civil contempt. The Court requested that the United States provide it with a Statement of Interest, and on December 8, 1986, the Government complied with a memorandum arguing that the Court lacked jurisdiction and would have great difficulty enforcing any contempt order. The Court took plaintiffs' Motion under advisement.

Meanwhile, in 1989 two events occurred. First, the Supreme Court handed down its decision in *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989), which dealt in detail with many of plaintiffs jurisdictional arguments. Plaintiffs have submitted a statement addressing the effect of *Amerada Hess* upon this action. Second, after several years of discussion with U.S. officials, on June 8, 1989, the Soviet Union obtained counsel in this matter and entered an appearance for the purposes of contesting jurisdiction. The Soviet Union now moves under Federal Rule 60(b)(4)[3] for relief from the Judgment and for a dismissal for lack of subject matter jurisdiction.

## II. DISCUSSION

In *Argentine Republic v. Amerada Hess Shipping Co.*, 488 U.S. 428, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989), the Supreme Court considered whether a U.S. court could exercise jurisdiction over a claim by Liberian shipping companies that the Argentine military had attacked its vessel in violation of international law. Rejecting the Alien Tort Claims Act as an independent grant of subject matter jurisdiction, the Court held that the FSIA is "the sole basis for obtaining jurisdiction over a foreign state in our courts." *Id.* 109 S.Ct. at 688. The Court also held that the limited list of exceptions to immunity provided in the FSIA compelled the conclusion that "immunity is granted in those cases involving alleged violations of international law that do not come within one of" these exceptions. *Id.*

As plaintiffs here now concede, in light of *Amerada Hess* this Court's reliance in 1985 on the ATCA, and upon an implied "clear violation of international law" exception to the FSIA, was incorrect. Plaintiffs insist however that the remaining three grounds for denying sovereign immunity to the Soviet Union remain valid. In addition, they assert that the Court may also assume jurisdiction under section 1605(a)(5) of the FSIA.[4]

The Court will address each of these arguments in turn.

### A. *Waiver of Sovereign Immunity from Failure to Appear*

■ The Court in 1985 held, and plaintiffs continue to argue, that the Soviet Union waived sovereign immunity by failing to raise it as an affirmative defense as

---

1. The ATCA provides that "district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law nations or a treaty of the United States." 28 U.S.C. § 1350.

2. By an Amended Judgment of November 7, 1985, the Court ordered the Soviet Union to produce the person or remains of Wallenberg, to produce all information and documents in its possession relating to Raoul Wallenberg, and to pay plaintiffs compensatory damages in the amount of $39 million. Having been served in Moscow with the Judgment, on March 6, 1986 the Soviets returned all papers to the U.S. Embassy with a note again asserting sovereign immunity.

3. That Rule provides that:
   On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:
   ... (4) the judgment is void.
   Fed.R.Civ.Pro. 60(b)(4).

4. This provision is typically referred to as the "noncommercial tort exception" to sovereign immunity. It denies immunity to a foreign state in a suit for "personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state...." 28 U.S.C. § 1605(a)(5).

required under the FSIA and the Federal Rules. This position comes primarily from a passage in the legislative history to the FSIA stating that immunity would remain an "affirmative defense which must be specially pleaded, the burden [remaining] on the foreign state to produce evidence in support of its claim." *See* H.R.Rep. No. 1487, 94th Cong., 2d Sess. 17, *reprinted in* 1976 Cong.Code & Admin.News 6604, 6616. The Supreme Court's decision in *Amerada Hess* did not address this issue.

The Court now holds that a waiver of sovereign immunity cannot be implied from a foreign state's failure to appear. First, such a waiver is inconsistent with the requirement that a court satisfy itself that jurisdiction exists prior to entering a default judgment. FSIA section 1608(e) provides that no default should be entered "unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). In *Verlinden, B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983), the Supreme Court noted the FSIA's legislative history, but nonetheless stated that under the Act,

> subject matter jurisdiction turns on the existence of an exception to foreign sovereign immunity, 28 U.S.C. § 1330(a). Accordingly, even if the foreign state does not enter an appearance to assert an immunity defense, a district court still must determine that immunity is unavailable under the Act.

*Id.* 461 U.S. at 493–94 n. 20, 103 S.Ct. at 1971 n. 20. If a failure to appear automatically waived sovereign immunity, there would be no reason for the district court to satisfy itself of anything. It could proceed

based upon the waiver. In addition, although the House Report calls for immunity to be pleaded as an affirmative defense, the Report does not state when it must be pleaded.[5]

Second, in 1987 our Circuit Court unequivocally stated in *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543 (D.C.Cir.1987), that a failure to appear does not constitute a waiver:

> A defendant who knows of an action but believes the court lacks jurisdiction over his person or over the subject matter generally has an election. He may appear, raise the jurisdictional objection, and ultimately pursue it on direct appeal.
>
>    *    *    *    *    *    *
>
> Alternatively, the defendant may refrain from appearing, thereby exposing himself to the risk of a default judgment. When enforcement of the default judgment is attempted, however, he may assert his jurisdictional objection. If he prevails on the objection, the default will be vacated.

*Practical Concepts*, 811 F.2d at 1547.

While plaintiffs have moved for a contempt order, their motion has not been ruled upon. The Soviet Union was entitled to wait to see if the contempt motion was decided against them and enforced. "Enforcement" in this context logically refers to a motion for an order under FSIA section 1610(c)[6] or 1610(d)(2).[7] No such action has occurred here and as a result, the Soviet Union has properly made the second election referred to in *Practical Concepts*. The Court therefore declines to infer a waiver of immunity from the Soviet's delayed appearance in this matter.[8]

---

**5.** Indeed, Congress considered an appearance coupled with a failure to plead immunity to be one example of an implied waiver under FSIA section 1605(a)(1). *See* H.R.Rep. No. 1487, *supra* at 18. This is strong evidence that Congress "anticipated, at a minimum, that waiver would not be found absent a conscious decision to take part in the litigation and a failure to raise sovereign immunity despite the opportunity to do so." *Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 378 (7th Cir.1985).

**6.** Section 1610(c) provides for the attachment of property in aid of execution of a judgment

against a foreign state only after "a reasonable period of time has elapsed" and proper notice has been given under section 1608(e). *See* 28 U.S.C. § 1610(c).

**7.** Section 1610(d)(2) permits the attachment of a foreign state's commercial property in the United States to secure satisfaction of a judgment prior to the elapse of a reasonable time under section 1610(c). *See* 28 U.S.C. § 1610(d)(2).

**8.** Needless to say, the Court also rejects plaintiffs' argument that the Soviet Union has not moved under Rule 60(b)(4) for relief within a

**B.** *Exception to Sovereign Immunity Under FSIA Section 1604: The Acts' Grant of Immunity "Subject to" Existing Treaties*

█ Plaintiffs continue to argue that they should benefit from the language of FSIA section 1604; that is, that sovereign immunity under the statute was to remain "[s]ubject to existing international agreements to which the United States is a party at the time of enactment...." 28 U.S.C. § 1604. The Court in 1985 said that a grant of immunity to the Soviet Union in this case would "conflict with" and "thwart" two international agreements: the Vienna Convention on Diplomatic Relations, and the 1973 Convention on Internationally Protected Persons.

In *Amerada Hess*, however, the Supreme Court interpreted section 1604 to mean that a foreign state has no immunity from suit under the FSIA only when such immunity would *"expressly* conflict" with an international agreement. *Amerada Hess*, 109 S.Ct. at 692 (emphasis added). The Supreme Court based this requirement for application of the exception upon language found in the FSIA's legislative history.[9] In *Amerada Hess*, the Court declined to find an express conflict in two maritime agreements because they

> only set forth substantive rules of conduct and state that compensation shall be paid for certain wrongs. They do not create private rights of action for foreign corporations to recover compensation from foreign states in United States courts.

*Amerada Hess*, 109 S.Ct. at 692.

Plaintiffs now concede that the Vienna Convention "does not contain provisions which could be said to expressly conflict with the FSIA." Plaintiffs' Supp. Statement at 9 n.*. They persist, however, in arguing that the 1973 Convention confers jurisdiction, in the sense that it presents an "express conflict" with the FSIA's grant of immunity. According to plaintiffs, the "conflict" comes from the Convention's mandate that parties assert jurisdiction for violations of diplomatic immunity.

What the plaintiffs neglect to explore, however, is the fact that the Convention requires jurisdiction over *crimes*, not civil suits, and in any event not necessarily over foreign states. The 1973 Convention contains no terms at all which conflict with sovereign immunity. The treaty obliges countries which sign it to punish crimes against diplomats. The United States did so by enacting the Act for the Protection and Punishment of Crimes Against Internationally Protected Persons, Pub.L. No. 94–467, 90 Stat. 1997 (1976).

The Convention was not a "self-executing" treaty, i.e., it did not create rights and duties until implemented by national legislation. Thus the treaty itself confers no private right of action. *See Head Money Cases*, 112 U.S. 580, 598–99, 5 S.Ct. 247, 253–54, 28 L.Ed. 798 (1884). Nor, for that matter, does it provide for a private compensation scheme for violations—a factor the Supreme Court considered in determining whether an "express conflict" existed in *Amerada Hess*.

Plaintiffs insist that the existence of an implied cause of action under implementing domestic legislation adequately "conflicts" with sovereign immunity. It is difficult to see why *domestic* legislation plays a role in the analysis. The FSIA speaks of immunity "subject to ... *international agreements,"* not the legislation implementing them. The legislative history to the FSIA

---

"reasonable time." No time limit will prevent an attack on a judgment as void. "[E]ven the requirement that the motion be made within a 'reasonable time,' which seems literally to apply to motions under Rule 60(b)(4), cannot be enforced with respect to this class of motion." 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2862 at 197 (1973). The circumstances of this case do not merit any departure from this principle.

**9.** *See* H.R.Rep. No. 1487, *supra:*

In the event an international agreement expressly conflicts with the [FSIA], the international agreement would control.... To the extent such international agreements are silent on a question of immunity, the [FSIA] would control; the international agreement would control only where a conflict was manifest.

*Id.* at 17–18, U.S.Code Cong. & Admin.News 1976, p. 6616.

and the Supreme Court both speak of immunity conflicting *with a treaty;* neither makes mention of purely domestic implementing legislation. The point of section 1604's "subject to" language was to ensure that express waivers by treaty would remain in effect, as would commercial contracts and agreements to which the U.S. was a party and which provided for non-judicial remedies. "Many provisions in such agreements are consistent with, but do not go so far as, the [FSIA]." H.R.Rep. No. 1487, *supra* at 17–18, U.S.Code Cong. & Admin.News 1976, p. 6616. In short, none of these explanations of the section's meaning require the Court to resort to implementing legislation to determine the existence of a "conflict." It must look to the treaty itself, and its treatment of immunity. There is simply no conflict here, let alone one that is "express" or "manifest." [10]

### C. *Implicit Waiver Under FSIA Section 1605(a)(1) Through the 1973 Convention*

■ The Court in 1985 also held that under FSIA section 1605(a)(1), the Soviet Union implicitly waived immunity by acceding to human rights and diplomatic immunity treaties. That section provides that a foreign state is not immune in cases:

> in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver.

28 U.S.C. § 1605(a)(1).

The Supreme Court addressed this section in *Amerada Hess.* It considered whether Argentina had implicitly waived immunity by signing certain maritime treaties:

Nor do we see how a foreign state can waive its immunity under § 1605(a)(1) by signing an international agreement that contains no mention of a waiver of immunity to suit in United States courts or even the availability of a cause of action in the United States.

*Amerada Hess,* 109 S.Ct. at 692.

In the House Report to the FSIA, Congress mentioned three typical implied waivers: (1) where the state has agreed to arbitration in another country; (2) where the foreign state agreed to a choice-of-law provision in a contract; and (3) where a state files a responsive pleading in a case without raising the defense of immunity. This Court's 1985 decision seems to be the only one ever to find an implied waiver in a setting other than these three situations.

In *Frolova v. Union of Soviet Socialist Republics,* 761 F.2d 370 (7th Cir.1985), the Seventh Circuit held that in the case of the U.N. Charter and Helsinki Accords, there was "absolutely no evidence from the language, structure or history of the agreements at issue that implies a waiver of the U.S.S.R.'s sovereign immunity" and "no basis for finding a waiver from the vague, general language of the agreements nor is there any reason to conclude that the nations that are parties to these agreements anticipated when signing them that American courts would be the means by which the documents' provisions would be enforced." *Id.* at 378.

This Court in 1985 relied on the U.S. Charter, and presumably the Helsinki accords in its holding. *See Von Dardel,* 623 F.Supp. at 256. Plaintiffs apparently abandon these agreements, and focus upon the 1973 Convention. They reiterate that the Convention required parties to assert jurisdiction and that "the Soviet Union must have anticipated that American courts as

---

**10.** A more technical point also disposes of plaintiffs' arguments as to FSIA section 1604 and the "subject to" language. The section refers to "existing" international agreements, "to which the United States is a party at the time of enactment of" the FSIA—October 21, 1976. 28 U.S.C. § 1604. Although uniformly called the "1973 Convention," that agreement did not take effect as to the United States until February 20, 1977.

*See* Convention on the Prevention and Punishment of Crimes Against Internationally Protected Persons, 28 U.S.T. 1975–76; *see also* Restatement (Third) of the Foreign Relations Law of the United States § 301, reporters note 5 (state becomes "party" to treaty when treaty takes effect). Thus, the 1973 Convention does not meet section 1604's "existing" requirement.

well as the courts of other nations would be used to enforce the Convention's provisions." Plaintiffs' Opposition at 56.[11]

Plaintiffs' continued reliance on the 1973 Convention is misplaced. An implied waiver arises from conduct belying any honest intention to preserve an entitlement to immunity; that is, it must be at least to some extent a purposeful, consensual act. If the Convention was to constitute an implied waiver, the Soviet Union had to anticipate at the time it signed the agreement that it would subject themselves to *civil* suit in the United States. *See Frolova*, 761 F.2d at 378. In no way could the Soviet Union have had such knowledge. The Convention concerns itself with *criminal* acts. It does not, by its terms, confer private rights on individuals. Moreover, the Soviet Union could never know what form implementing legislation would take—nor could they possibly have considered whether a civil remedy would be implied from that criminal statute.

In short, the idea of a waiver from the 1973 Convention is utterly illogical. As the court in *Frolova* pointed out, "[c]ourts have generally required convincing evidence that a treaty was intended to waive sovereign immunity...." *Frolova*, 761 F.2d at 378. No such evidence presents itself here. Thus, no waiver shall be implied.

### D. *The Soviet Union's Actions as a Non–Commercial Tort Falling within FSIA Section 1605(a)(5)*

■ Section 1605(a)(5) denies sovereign immunity to a foreign state in a suit "for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state...." The Supreme Court's decision in *Amerada Hess*

contained a brief discussion of this section. The Supreme Court noted the exception to immunity requires injury within the United States, and that the injury to Amerada Hess occurred on the high seas. *See Amerada Hess*, 109 S.Ct. at 690–91. Despite the this Court's refusal to rely on section 1605(a)(5) in 1985, Plaintiffs here now reassert it as a basis for upholding jurisdiction and denying the Soviet's motion for relief from the default judgment.

Two cases of this Circuit require that both the tort and the injury must occur within the United States in order for the exception to apply. *See Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 842 (D.C.Cir.1984), *cert. denied*, 469 U.S. 881, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984); *Asociacion de Reclamantes v. United Mexican States*, 735 F.2d 1517, 1524 (D.C.Cir. 1984) (Scalia, J.), *cert. denied*, 470 U.S. 1051, 105 S.Ct. 1751, 84 L.Ed.2d 815 (1985).[12] *Reclamantes* also states that the entirety of the tort must take place within the United States. *Id.* at 1525.

Plaintiffs claim that Soviet misrepresentations in the United States about Wallenberg's fate, constitutes a "significant part" of the tort alleged, and therefore satisfies section 1605(a)(5). In other words, plaintiffs deny the language in *Reclamantes* to the effect that the entire tort must occur in the United States.

Section 1605(a)(5)(B) specifically provides that the non-commercial tort exception *does not* apply to claims arising out of misrepresentation. Plaintiffs' complaint is for the unlawful seizure, detention, and possible death of Wallenberg, none of which occurred in the United States. One of two analyses therefore apply. First, the "misrepresentations" are a separate tort which cannot benefit from 1605(a)(5)'s exception

---

11. In addition, plaintiffs make what the Court believes is a rather remarkable argument: that Soviet actions and admissions regarding its detention of Wallenberg constitute an implied waiver. This point has no merit whatsoever. It comes down to nothing more than the claim that fundamental violations of international law do not deserve immunity under the FSIA. As noted *supra*, the Supreme Court squarely rejected this argument in *Amerada Hess*.

12. *See also Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 379 (7th Cir.1985); *Olsen v. Government of Mexico*, 729 F.2d 641, 645–56 (9th Cir.), *cert. denied*, 469 U.S. 917, 105 S.Ct. 295, 83 L.Ed.2d 230 (1984); *In re Sedco, Inc.*, 543 F.Supp. 561, 567 (S.D.Tex.1982), *vacated on other grounds*, 610 F.Supp. 306 (S.D.Tex. 1984).

**8**

to immunity. In the alternative, even if the distinction between separate torts is ignored and both the detention and misrepresentations are considered one tortious whole, *Reclamantes* nonetheless dictates that the entirety of the tort occur in the United States. Plaintiffs cannot meet this requirement. In either case, section 1605(a)(5) does not provide plaintiffs with an exception to sovereign immunity justifying the Court's exercise of jurisdiction.

## II. CONCLUSION

The Court finds that none of the grounds upon which jurisdiction was asserted in 1985 currently withstand scrutiny. The FSIA provides for quite limited exceptions to the bar posed by sovereign immunity in cases against foreign states. Here, the Soviet Union has not waived immunity, whether in failing to appear initially, or under FSIA section 1605(a)(1) by its signature on the 1973 Convention on Internationally Protected Persons. Nor does that Convention expressly conflict with the FSIA's grant of immunity under FSIA section 1604. Finally, plaintiffs cannot meet the requirements of the "non-commercial tort" exception to immunity in section 1605(a)(5). Lacking jurisdiction over the subject matter, this Court has no alternative but to grant the Soviet Union's motion, vacate the default judgment and dismiss the complaint.