**Hugo PRINCZ, Plaintiff,**

v.

**FEDERAL REPUBLIC OF GERMANY, Defendant.**

**Civ. A. No. 92–0644.**

United States District Court, District of Columbia.

Dec. 23, 1992.

Steven R. Perles, Washington, DC, and David Sher, Arlington, VA, for plaintiff.

Peter Heidenberger, Chevy Chase, MD, and Thomas G. Corcoran, Jr., Berliner, Corcoran & Rowe, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

This case is presently before the Court on defendant Federal Republic of Germany's Motion to Dismiss for lack of subject matter jurisdiction. Plaintiff, Mr. Hugo Princz, filed this action to recover damages sustained by him as a result of his internment by the Nazis during World War II. For the reasons stated below, Defendant's motion is denied.

## I. *Background*

The background facts to this case as alleged by the plaintiff are as follows.

Mr. Princz is a Jewish American who was taken into custody by the Nazis during World War II and placed in a concentration camp for the duration of the War. At the time of his internment, Mr. Princz was an American citizen and an unemancipated minor, living with his mother, father, two brothers and a sister in what is now Czechoslovakia. His father, a naturalized American citizen, was engaged in business activities in Czechoslovakia. In 1942, approximately ninety days after the formal declaration of war between the United States and Germany, Mr. Princz and his family were arrested by the Slovak Fascist police, turned over to the German SS, and sent to Camp Maidanek in Poland.

Almost all Americans captured by the Nazis were released in a prisoner exchange sponsored by the International Red Cross. Mr. Princz and his family, all American Jews, were not released.

The atrocities committed by the German Government against the plaintiff and his family cannot adequately be described in words. Mr. Princz believes his parents and sister were killed in the concentration camp known as Treblinka. The German Government sent Mr. Princz and his two brothers to Auschwitz. Mr. Princz and his two brothers were then "leased" by the German Government to the German chemical cartel I.G. Farben and enslaved at a facility close to Auschwitz called Birkenau. During the course of his enslavement at Birkenau, Mr. Princz witnessed the intentional starvation of his two brothers. Mr. Princz was subsequently sent to the Warsaw Ghetto Camp, forced on the death march from Warsaw to Dachau, and enslaved at the Messerschmidt underground airplane factory. Mr. Princz is the only member of his family to survive the barbaric acts of the Nazi regime.

When World War II ended, Plaintiff was rescued from a freight car, packed with other half-dead concentration camp survivors, by U.S. troops. Most of the survivors were sent to Centers for Displaced Per-

sons. Seeing that Mr. Princz had "USA" stenciled across his uniform, the U.S. troops sent him to an American military hospital instead.

For many years Mr. Princz has attempted to obtain a pension, as provided to thousands of other Holocaust survivors, or some other form of reparations from the West German government. The first German compensation act, providing for pensions for Holocaust survivors was passed in 1952. In 1955, Mr. Princz filed a claim for a pension. The United Restitution Office (URO), which was handling the disbursement of the pension funds, advised Mr. Princz that he was not eligible for a pension because he had been an American citizen at the time of his enslavement.

In 1965, the law providing for pensions administered by URO was amended. According to Mr. Princz, the 1965 amendment only extended the period during which survivors could file a claim through 1969. It did not expand the pool of eligible claimants.[1] For this reason he did not file a second claim pursuant to the 1965 law.

Subsequently, the Federal Republic of Germany set up a hardship fund of $1.2 billion to assist Holocaust survivors who, for excusable reasons, had not filed a timely application for a pension under the earlier laws. This fund is administered by the Jewish Claims Commission in New York; the German Government has no control over eligibility determinations or disbursement of the hardship funds.

Mr. Princz did apply for a hardship payment from this fund. However, his counsel was advised that these funds are being reserved for genuine hardship cases. Since Mr. Princz has been able to work as a grocery clerk, and his wife has worked as a bookkeeper, he is not eligible to receive a hardship payment.

In 1984, Plaintiff sought the assistance of Senator Bradley of New Jersey, who subsequently enlisted the assistance of the U.S. Department of State. The German government formally advised the State Department that Mr. Princz did not qualify for any government-sponsored reparations. The State Department then attempted to obtain a so-called *ex gratia* reparation payment from the Defendant government, which declined to make such payment.

In 1986, counsel for plaintiff attempted to obtain an *ex gratia* payment from Germany. The Defendant's Embassy in the United States verified that Mr. Princz was a Holocaust survivor and requested that the German Foreign Ministry in Bonn submit such a request to the German Parliament. On December 8, 1987, plaintiff's counsel was advised that the German Foreign Ministry had declined to submit such a request.

According to counsel for Defendant at the December 11, 1992 hearing before this Court, Mr. Princz's situation was presented to the German Supreme Court, which held that the 1969 statute of limitations for filing pension claims was final, thereby precluding consideration of another application for a pension through the URO process at this time.[2]

On March 15, 1992, a treaty concerning the unification of Germany between the United States and Germany became effective. To confirm an understanding reached between the United States and Germany in discussions leading up to this treaty, Germany's Federal Minister for Foreign Affairs sent a letter, dated 18 September 1990, to U.S. Secretary of State James Baker, in which he assured Secretary Baker that, after unification, the Federal Republic of Germany would "seek to provide expeditious and satisfactory resolution of claims of Jewish victims of the Nazi regime against the German Democratic Republic

---

1. Defendant asserts that the 1965 amendment did expand the scope of permissible claimants so as to have enabled plaintiff to file a claim under the law, but that the plaintiff failed to file such a claim. This is a disputed issue which is not before the Court at this time.

2. Mr. Princz did not file a specific claim in the German courts against the Federal Republic of Germany. Rather, counsel for Germany advised the Court that, when presented with the issue involved in Mr. Princz's case, the German Supreme Court took up the matter as an administrative concern.

shortly after unification." This letter was attached to the State Department's September 24, 1990 report to the President on the treaty. Plaintiff has not received reparations as of this time.[3]

Plaintiff believes that he is one of only two U.S. nationals who survived internment during the Holocaust. The other was captured in Holland and is receiving a pension.[4]

## II. *Jurisdiction*

The sole issue before the Court at this time is whether or not the Court has jurisdiction over the Federal Republic of Germany to hear this case. Defendant, in its Motion to Dismiss, argues that since plaintiff's claim does not fit any of the exceptions to Congress' broad recognition of immunity to other nations contained in the Foreign Sovereign Immunities Act, 28 U.S.C. § 1330, plaintiff's complaint must be dismissed.

 Finding that Congress intended to enact a comprehensive statutory scheme governing U.S. courts' jurisdiction over foreign nations,[5] the Supreme Court in *Argen-tine Republic v. Amerada Hess*, 488 U.S. 428, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989), held that the FSIA is "the sole basis for obtaining jurisdiction over a foreign state" in U.S. courts. Jurisdiction in such a case "depends on the existence of one of the specified exceptions to foreign sovereign immunity" found in the FSIA. *Id.*, 488 U.S. at 435, 109 S.Ct. at 688 (citations omitted). This is the clearly stated rule.[6]

This case does not merely involve a violation of international law. This case involves an American whose most fundamental rights of citizenship and as a human being were violated. Mr. Princz was interned by the Nazis. He was enslaved by the German Government and German companies. He witnessed the tortured deaths of his two brothers and lost both parents and his sister to German brutality as well. To describe Auschwitz, one of the two concentration camps where he was interned, as a human butcher shop would be generous. What individuals like the plaintiff in this case suffered in the Holocaust were acts of barbarism, committed by a merciless government in flagrant disregard of interna-

---

3. It is unclear whether the claims referred to in this letter included claims of both U.S. nationals who were interned in concentration camps and those whose property in occupied territories was expropriated during the War, or only claims of the latter. In a letter, dated September 11, 1990, Secretary Baker wrote to the German Foreign Minister to formally confirm the U.S. Government's position "concerning compensation to United States' citizens whose property was taken in the former Soviet Zone of occupation in Germany or in the Soviet sector of Berlin." The Secretary's letter continued, "[T]he United States is of the opinion that under international law claims of U.S. nationals that have been the subject of inter-governmental negotiation between the governments of the United States and the German Democratic Republic ... must be resolved in inter-governmental discussions between the Governments of the United States and the Federal Republic of Germany."

It is to these property claims of U.S. citizens that the German Foreign Minister's September 18, 1990 letter refers. The Foreign Minister's reference to the resolution of claims of Jewish victims of the Nazi regime does not specifically refer to U.S. citizens interned by the Nazis during the War.

The Court does not understand why the State Department has not raised Mr. Princz's claim with the Federal Republic of Germany subsequent to this correspondence and the signing of the unification treaty. In any event, its failure to do so does not affect the ruling on the motion presently before the Court.

4. The treaty between the Defendant and Holland permits Holland to determine survivors' pension eligibility. Under Dutch law, any survivor who was captured in Holland can receive a pension.

5. As noted by the Supreme Court, the legislative history supports this conclusion. *See* U.S.Code Cong. & Admin.News 1976 6604–6635.

6. As noted by the Supreme Court, the legislative history supports this conclusion. *See* U.S.Code Cong. & Admin.News 1976 6604–6635.

One District Court for the District of Columbia has applied *Hess* to hold that U.S. courts lacked jurisdiction in a case involving a claim brought on behalf of a Swedish diplomat against the Soviet Union for his alleged unlawful seizure in 1945, subsequent imprisonment and possible death. *Bon Dardel v. Union of Soviet Socialist Republics*, 736 F.Supp. 1 (D.D.C. 1990). The plaintiff in that case, however, was not a U.S. citizen.

tional law, the laws of civilized societies and all principles of human decency.

The German government showed absolutely no respect for the laws of any other nation. The government extended no rights at all to the plaintiff or any member of his family. The German Government exterminated five members of a law-abiding American family without due process of law. Their only "crime" was being American Jews.

■ The Supreme Court did not have such extraordinary facts as those presently before this Court in rendering its decision in *Hess*. And the Court cannot believe that, in enacting the Foreign Sovereign Immunities Act, Congress contemplated a factual scenario akin to that at bar, let alone that it intended to bar a U.S. citizen from seeking redress against a nation standing in the shoes of his or her would-be butcher in U.S. courts in a case such as this. Therefore, this Court concludes that neither *Hess* nor the FSIA itself bars this Court from hearing the plaintiff's claim.

This Court finds that the Federal Sovereign Immunities Act has no role to play where the claims alleged involve undisputed acts of barbarism committed by a one-time outlaw nation which demonstrated callous disrespect for the humanity of an American citizen, simply because he was Jewish. The Court cannot permit such a nation, which at the time these barbaric acts were committed neither recognized nor respected U.S. or international law, to now block the legitimate claims of a U.S. citizen by asserting U.S. law to evade its responsibilities.

A government which stands in the shoes of a rogue nation the likes of Nazi Germany is estopped from asserting U.S. law in this fashion. To allow otherwise would create a severe imbalance in the reciprocity and mutual respect which must exist between nations, and would work an intolerable injustice against the plaintiff and the principles for which this country stands. In a remarkable show of chutzpa, Defendant suggests that Mr. Princz sue I.G. Farben, one of the companies to whom the Nazis "leased" Mr. Princz. Perhaps I.G.

Farben, one of the many companies complicit in the exploitation and extermination of hundreds of thousands of Jews during World War II should be held accountable for their crimes as Defendant suggests. This argument cannot absolve Defendant of its participation in these crimes against humanity. It only goes to show Defendant's complete lack of understanding of what this case is about. It was the German government which orchestrated and executed the mass exploitation and genocide of millions of human beings during World War II. This case is about the German Government's responsibility for these crimes as they affected Mr. Princz. It is not only about slave labor. Defendant simply cannot be relieved of its responsibility because of the involvement of other parties in causing the unconscionable mistreatment and suffering of Mr. Princz.

Defendant also argues that Mr. Princz can press his suit in German courts. This is not an acceptable alternative. Not only has the German Supreme Court already issued an administrative determination which indicates that Plaintiff's claim would be denied, but, according to the plaintiff, no foreign national has ever successfully brought a case such as this in Germany. While the Court recognizes that the German government of today is a far cry from the government of Adolph Hitler, the intransigence and lack of compassion shown by the government in its declination to consider the pleas made by the U.S. Department of State and a U.S. Senator on behalf of Mr. Princz and in the proceedings before this court confirm the slim odds Plaintiff has of achieving redress in the courts of that nation.

Congress did indeed fashion a comprehensive scheme regarding U.S. courts' jurisdiction over foreign nations. But Congress has not stripped Americans of their rights of citizenship or of their right to be protected by our government and our laws just because they travel overseas. When he left the shores of the United States in the early 1940's, Mr. Princz did not leave his citizenship behind; when he lived in Czechoslovakia he carried his citizenship

with him; and when he was seized without cause by the Germans, he still retained his American citizenship.

If Mr. Princz's citizenship means anything, it must mean that he can seek vindication of his rights in the courts of this nation. Congress cannot have intended to force Mr. Princz, an American citizen with scant financial resources, to seek justice in the courts of the very country which so brutally violated his dignity and humanity and subsequently has indicated no willingness to recognize his just claim.

An American citizen cannot be denied access to the only forum that can vindicate his rights as a citizen by a nation that robbed him of those rights. To permit this case to go forward will only enable Mr. Princz to end his odyssey for basic justice, a journey that he embarked on some 30 or 40 years ago. It is one thing to relate the horrors the plaintiff has experienced at the hands of the Nazi government. It is another horrendous indignity to require this individual to spend the rest of his life seeking redress for the unspeakable crimes committed against him and his family by the defendant. An American court must be available to the plaintiff, particularly since every other avenue of redress has been foreclosed to him.

To put it in another way, a United States citizen, who was a victim of the Holocaust, has a constitutional right to proceed in a United States Court against the very nation that subjected him and his family to the most unspeakable and barbarous acts known to humankind. To hold otherwise would complete the stripping of Mr. Princz's most valuable rights of citizenship—a process begun many years ago when the German government brutalized and murdered his family, forced him on a death march and placed him in a slave camp. To accept defendant's position would make a mockery of the Holocaust memorial project, in which millions of dollars have been spent to erect a monument in this nation's capitol to memorialize the Holocaust and send a message to the world that it shall never happen again.

What this Court holds today is that under the circumstances of this case, a nation that does not respect the civil and human rights of an American citizen is barred from invoking United States law to block the citizen in his effort to vindicate his rights. In such a case, Plaintiff has a right to have his claim heard by a U.S. court.[7]

## APPENDIX A

Excerpt from Transcript of December 11, 1992 Hearing in Civil Action No. 92–644, pp. 12–15.

MR. PERLES: He is only one of two American citizens who are Holocaust survivors, Your Honor ... that we know of. The other individual was captured in Holland, and he received a pension, because under Dutch law ... they go on a basis of where you were captured, not the nationality of the captured individual.

THE COURT: Well, was he originally a U.S. citizen and he was caught in Germany? What happened? How did he get into the concentration camp?

MR. PERLES: He was a U.S. National and at the time an unemancipated minor with his family. His father was a U.S. National, and an American businessman in what is now called Slovakia or Czechoslovakia, and they were arrested after— roughly 90 days after the bombing of Pearl Harbor. Their U.S. documents were destroyed. They were turned over by the Slovak Fascist police to the SS and their U.S. papers simply weren't honored.

THE COURT: And so he is—you say he was a U.S. National. Was he an American citizen?

MR. PERLES: Yes, he was an American citizen.

THE COURT: And his father was an American citizen?

---

7. Set forth in Appendix A to the Court's Opinion is a colloquy that took place at oral argument between Court and counsel for plaintiff. This colloquy is revealing as to what the plaintiff was subjected to during the Holocaust.

MR. PERLES: And his father was an American citizen. His father was a naturalized American citizen.

THE COURT: And so they put the whole family in the concentration camp?

MR. PERLES: That is correct, Your Honor. They should have been swapped in the International Red Cross sponsored prisoner exchange, which is what happened to almost all captured Americans. He was not—he and [h]is family were not Slovak.

THE COURT: Well, was he put in because he was Jewish, or was he put in because he was American?

MR. PERLES: Well, I can't answer that question, Your Honor. Presumptively he was put in because he was a Jewish American. But that's a question that I'm never going to be able to reconstruct. You know ... I have to ask an individual who was then 17 years old, what happened during this confused time. He may never know why he was never swapped.

THE COURT; And they put the whole family, the mother, father and the son in?

MR. PERLES: And brothers and sister[ ]. He is sole survivor.

THE COURT: Which concentration camp?

MR. PERLES: He and two brothers went to Auschwitz. His parents and his sister were presumptively killed in [Maidanek]. One brother escaped and was killed in the Warsaw ghetto uprising.

THE COURT: Where was the other one killed?

MR. PERLES: He was in the—he was a participant in the Warsaw ghetto uprising.

THE COURT: One brother.

MR. PERLES: One brother who escaped.

THE COURT: What about the other brother?

MR. PERLES: They were both killed in Auschwitz in Mr. Princz' presence. Two younger brothers were killed with him.

THE COURT: How were they killed?

MR. PERLES: They were starved to death in the Berkenau Hospital, Your Honor. And they were Americans. In fact, if you look at what we've been able to reconstruct of the German records, they indicate that Mr. Princz—that they knew Mr. Princz was an American National. In fact, the reason he doesn't have a pension is he never went to a center for displaced persons. The reason he didn't go to a center for displaced persons is because the Germans stenciled his nationality on his chest. It says USA on his uniform, and when an American [Army] corp[s] liberated him, they're pulling all these half dead people out of freight cars, and there is this man that says USA across his chest.

So instead of sending him with the rest of these half dead people to a center for displaced persons, they wanted to give him better medical treatment, so he went to an American military hospital. And he survived because he went to an American military hospital. But because he was never in that center for displaced persons, because he was in an American military hospital, he was not eligible under German law for a $500 a month pension.

This case is about Mr. Princz's 30 year quest for a $500 a month pension. I've been trying since March 9, 1986 to get this man his $300 to $500 a month pension ...

THE COURT: Have you filed in Germany? Have you brought any action in Germany?

MR. PERLES: We have not brought an action in Germany, and I must say I've read the—not the cases themselves, but the scholarly works describing them. No foreign national has ever successfully brought a case in Germany, and I don't view it as a cost effective undertaking for someone of Mr. Princz' age and financial standing. It's just not a viable option for him.

THE COURT: So they robbed this person of his citizenship, of his life—I mean of his liberty. Go ahead.

MR. PERLES: And they won't give him a pension. That's the case.

## ORDER

The Court currently has before it Defendant's Motion to Dismiss. Upon consideration of Defendant's motion and Plaintiff's opposition thereto, and after hearing oral

argument from counsel for both sides, for the reasons stated in the foregoing Opinion, it is hereby

ORDERED that Defendant's motion is denied.