IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————————

No. 01-30679

———————————————————

ARNOLD JACKSON; LINDA JACKSON;
and BRIAN JACKSON,

Plaintiffs-Appellees,

versus

FIE CORPORATION; ET AL.,

Defendants,

FRATELLI TANFOGLIO DI TANFOGLIO
BORTOLO & C.S.N.C., formerly
known as Fratelli Tanfoglio SPA,

Defendant-Appellant.

————————————————————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana

————————————————————————————————————

August 20, 2002

Before KING, Chief Judge, REAVLEY, and WIENER, Circuit Judges.

WIENER, Circuit Judge:

This appeal turns on whether a defendant that knowingly suffers a default judgment to be rendered against it may thereafter employ Rule 60(b)(4) to contest a factual finding that was vital to both (1) the rendering court's specific personal jurisdiction —— here, as a putative minimum contact with the forum state —— and (2) the merits of the default judgment —— here, as proof that the

defendant manufactured the offending product in this product-liability suit. We conclude, apparently for the first time in this Circuit, that when a court rendering a default judgment makes a factual finding that has that kind of dual significance, such a finding has no preclusive effect in a subsequent Rule 60(b)(4) challenge to personal jurisdiction. Put differently, despite the importance of such a factual finding to the merits of the default judgment, the finding's jurisdictional significance remains amenable to attack under Rule 60(b)(4). In the instant case, the district court's refusal to permit such a challenge constituted legal error, leaving us no choice but to vacate and remand.

## I. FACTS AND PROCEEDINGS

### A. The Default Judgment

In May 1992, while moving into his new home in New Orleans, Plaintiff-Appellee Arnold Jackson accidentally dropped an envelope that contained a loaded but uncocked .25 caliber pistol. The pistol discharged, firing a bullet that struck Jackson in the neck, severing his spinal cord and rendering him a permanent quadriplegic.

Jackson, together with his wife and son, Plaintiffs-Appellees Linda Jackson and Brian Jackson, brought suit in Louisiana state court against parties that he alleged were responsible for, inter alia, manufacturing the pistol and its component parts, namely Defendant-Appellant Fratelli Tanfoglio di Tanfoglio Bortolo & C.

2

S.n.c. (hereafter, "Fratelli Tanfoglio"[1]), an Italian firearms manufacturer; and two other, confusingly-named Italian firearms firms, Fabrica D'Armi di Tanfoglio Giuseppe, S.r.l. (hereafter, "Tanfoglio Giuseppe"), and Giuseppe Tanfoglio, S.p.a. Whether these three firms (collectively, the "Tanfoglio firms") were truly independent of each other at all times relevant to this action is disputed, but the record suggests that Fratelli Tanfoglio was founded by the children of the founder of Tanfoglio Giuseppe.

Whatever their degree of corporate interrelationship, none of the Tanfoglio firms chose to make an appearance in this case, either before or after another defendant removed it to federal court. Over time, the defendants that did make appearances were dismissed,[2] leaving the three absent Tanfoglio firms as the only defendants.

The Jacksons filed for a default judgment against the Tanfoglio firms. After an intervening appeal, the district court held several days of hearings, taking testimony from the Jacksons and their expert witnesses in medicine and economics. Also in evidence was the deposition of Lama S. Martin, the Jacksons' firearms expert. Martin testified that the design of the pistol

---

[1]"Fratelli Tanfoglio" is Italian for "Tanfoglio Brothers."

[2]We sustained the district court's summary judgment in favor of one defendant, Southern Diecast Company, in Jackson v. FIE Corp., No. 97-31090 (5th Cir. Oct. 5, 1998) (unpublished), 161 F.3d 8 (table), available at http://www.circ5.dcn/isys_ca5/index.htm. Another corporate defendant filed for bankruptcy, and still more corporate defendants appear to have been dissolved.

3

was unsafe; specifically, that it was obsolete in ignoring specified principles of gun design and safety that had been established for a century. Hence the proffered product defect: The pistol's firing pin assertedly was too long, which caused the uncocked pistol to fire on impact when it was dropped.

Given this testimony, identification of the pistol's manufacturer and distributor loomed large. The pistol itself bears the trademark of Firearms Import and Export Corporation, a Florida firm. The only record evidence identifying Fratelli Tanfoglio as the manufacturer of the pistol or any of its parts is a short passage from Martin's deposition, when he answered a compound question:

> Q. Now, Mr. Martin, have you had occasion to do some research and study in your reference materials as to the origin of this gun, the Tanfoglio and Giuseppe Tanfoglio [sic]?
> A. I have, yes.
> Q. And was this gun made by Giuseppe Tanfoglio and Fratelli Tanfoglio?
> A. Yes, in —— in their plant in Gardone, Italy.

On the strength of this testimony, and seemingly absent any further evidence linking any of the Tanfoglio firms to the pistol, the court entered a default judgment in the Jacksons' favor, finding that the pistol had been "manufactured and distributed by the Italian defendants" and concluding that the Tanfoglio firms were liable under Louisiana's product liability law. The district court also concluded that it had the jurisdictional power to bind the Tanfoglio firms to a judgment, noting that the Jacksons had

4

properly served the Tanfoglio firms under both the Louisiana long-arm statute[3] and the Hague Service Convention.[4]  The court did not, however, analyze whether personal jurisdiction of the Tanfoglio firms otherwise comported with due process.[5]

The court awarded the Jacksons $11.02 million in compensatory and special damages, plus interest and costs.  No appeal was taken, so in March 1999, the district court declared the judgment to be final and executory.

B.   The Rule 60(b)(4) Motion

In October 2000, nearly two years after the district court entered judgment, Fratelli Tanfoglio, acting alone, filed in the district court a Rule 60(b)(4) motion to vacate judgment, contending that the default judgment was void ab initio because the

---

[3]LA. REV. STAT. ANN. § 13:3201 (West 1991).  This statute extends the personal jurisdiction of a Louisiana court up to federal due-process limits.  Therefore an inquiry by a federal court sitting in diversity in Louisiana into personal jurisdiction over a nonresident collapses into the federal due-process inquiry.  Patin v. Thoroughbred Power Boats Inc., 294 F.3d 640, 652 (5th Cir. 2002).

[4]Convention on the Service Abroad of Judicial and Extra-judicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638.

[5]Fratelli Tanfoglio contends on appeal that the district court thereby failed to perform its "affirmative duty to look into its jurisdiction both over the subject matter and [over] the parties" when rendering a default judgment.  System Pipe & Supply, Inc. v. M/V Victor Kurnatovskiy, 242 F.3d 322, 324 (5th Cir. 2001) (citation and internal quotation marks omitted).  This case is before us on appeal of denial of a Rule 60(b)(4) motion, however, as Fratelli Tanfoglio never appealed the default judgment.  Given our interpretation of Rule 60(b)(4) below, we do not reach the System Pipe issue.

court had lacked personal jurisdiction to enter judgment against that defendant.

At the heart of Fratelli Tanfoglio's challenge to personal jurisdiction lies its assertion that it never manufactured .25 caliber pistols until 1993, well after Jackson's injury occurred. That being so, argues Fratelli Tanfoglio, it could not possibly have made Jackson's pistol or any of its parts. Rather, this argument goes, the legally unrelated firm of Tanfoglio Giuseppe made the firing pin, and Tanfoglio Giuseppe is now defunct, having been properly liquidated and dissolved under Italian law. Therefore, reasons Fratelli Tanfoglio, it lacked the minimum contacts with Louisiana vis-à-vis this cause of action to support the court's exercise of <u>specific</u> personal jurisdiction without violating due process. Fratelli Tanfoglio contends further that any contacts it may have had with Louisiana that were unrelated to this cause of action do not rise to the "continuous and systematic" level required before <u>general</u> personal jurisdiction can attach.

To prove these assertions in prosecuting its Rule 60(b)(4) motion in the district court, Fratelli Tanfoglio submitted several affidavits. It also sought to depose Jackson and his firearms expert and to engage in other discovery. Limited discovery of jurisdictional facts did occur, but the magistrate judge in charge appears to have regarded inquiry into the identity of the gun's manufacturer as an impermissible attempt to reopen the merits of the default judgment. Consequently, the magistrate judge refused

6

Fratelli Tanfoglio's request to depose the Jacksons' firearms expert, Martin. Herein lies the problem posed by the dual nature of this crucial fact: It is highly significant both to the merits of the judgment (which the magistrate judge focused on) and to the court's personal jurisdiction (which the magistrate judge slighted).

Fratelli Tanfoglio challenged this ruling and raised other discovery issues in the district court. That court, however, ruled against Fratelli Tanfoglio on its Rule 60(b)(4) motion without ever reaching the validity of the magistrate judge's proposal. Noting that the question who bears the burden of proof in a Rule 60(b)(4) challenge to personal jurisdiction is one that has not been answered for this circuit, the district court adopted the view of the Seventh Circuit that once a defendant with notice chooses to suffer a default judgment, he is the party who thereafter must shoulder the burden of proving the absence of personal jurisdiction.[6]

---

[6]See Bally Export Corp. v. Balicar, Ltd., 804 F.2d 398, 401 (7th Cir. 1986). We have previously adverted to this question, but did not resolve it. Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind, 841 F.2d 646, 649 n.7 (5th Cir. 1988). Here, the district court held that the burden of proof shifts to the defaulting defendant and Rule 60(b)(4) movant, Fratelli Tanfoglio. As Fratelli Tanfoglio has not challenged this ruling on appeal, it is now the law of the case. It is not yet, however, the law of this circuit, as we do not reach the issue and need not choose a side in the split of authority on this question, leaving that for another day. See Ariel Waldman, Comment, Allocating the Burden of Proof in Rule 60(b)(4) Motions to Vacate a Default Judgment for Lack of Jurisdiction, 68 U. Chi. L. Rev. 521, 529–36 (2001) (describing the split among circuit and district courts, and counseling against the

The district court then evaluated Fratelli Tanfoglio's Rule 60(b)(4) motion under the multifactor balancing test that we set forth in Magness v. Russian Federation.[7] Using this standard, the court determined that "Fratelli Tanfoglio's principal defense, that it did not manufacture the Titan .25 caliber pistol at issue, is not meritorious in this motion." The court also determined that other contacts that Fratelli Tanfoglio had with the United States firearms market and Louisiana in particular supported its personal jurisdiction. The court concluded:

> The factual allegations in Plaintiff's Petition, conclusively established due to Fratelli Tanfoglio's default, establish that Fratelli Tanfoglio manufactured, sold, and distributed the Titan .25 caliber pistol that caused his Arnold Jackson's [sic] injuries in Louisiana. Fratelli Tanfoglio's own discovery responses confirm that it has "minimum contacts" with Louisiana, and that the exercise of personal jurisdiction over it does not offend "traditional notions of fair play and substantial justice." The court therefore denies Fratelli Tanfoglio's Rule 60(b)(4) motion.

The court's denial of the Rule 60(b)(4) motion mooted Fratelli Tanfoglio's desire for further discovery, and this appeal followed.

## II. ANALYSIS

### A. Standard of Review

In general, "whether in personam jurisdiction can be exercised over a defendant is a question of law and subject to de novo

---

Seventh Circuit's approach in Bally Export).

[7] 247 F.3d 609, 618–19 (5th Cir. 2001).

review" by this court.[8]  This <u>de novo</u> standard, we have held, applies to personal-jurisdiction challenges under Rule 60(b)(4), just as it does in other contexts.[9]  Our cases have justified this rule in different ways.  For example:

> Though we generally review a district court's Rule 60(b) ruling solely for abuse of discretion, *Bludworth Bond*, 841 F.2d at 649, "Rule 60(b)(4) motions leave no margin for consideration of the district court's discretion as the judgments themselves are by definition either legal nullities or not." *Carter v. Fenner*, 136 F.3d 1000, 1005 (5th Cir. 1998).  As a consequence, our review of the issues raised in this appeal is effectively de novo. *See Export Group v. Reef Industries, Inc.*, 54 F.3d 1466, 1469 (9th Cir. 1995) ("We review de novo . . . . a district court's ruling upon a Rule 60(b)(4) motion to set aside a judgment as void, because the question of the validity of a judgment is a legal one.").[10]

Stated differently, but to the same effect, we have written that we review Rule 60(b)(4) challenges <u>de novo</u> because it is "a per se abuse of discretion for a district court to deny a motion to vacate a void judgment."[11]  We have also reasoned that if "the motion is based on a void judgment under rule 60(b)(4), the district court has no discretion — the judgment is either void or it is not."[12]

---

[8]<u>Dickson Marine Inc. v. Panalpina, Inc.</u>, 179 F.3d 331, 335 (5th Cir. 1999).

[9]<u>Carter v. Fenner</u>, 136 F.3d 1000, 1005 (5th Cir. 1998) ("[W]e review the district court's ruling on a Rule 60(b)(4) motion de novo.").

[10]<u>Harper Macleod Solicitors v. Keaty & Keaty</u>, 260 F.3d 389, 394 (5th Cir. 2001).

[11]<u>Carter</u>, 136 F.3d at 1006.

[12]<u>Recreational Properties, Inc., v. Southwest Mortgage Service Corp.</u>, 804 F.2d 311, 314 (5th Cir. 1986).

We see no need to reconcile these semantic variations today, however, as they effect no substantive difference in the way that we apply this plenary standard in our review of the instant case.

B.   Rule 60(b)(4)

Rule 60(b), under which Fratelli Tanfoglio brought its motion to vacate, provides:

> **(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.**  On motion and upon such terms as are just, the court may relieve a party...from a final judgment...for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud..., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged...; or (6) any other reason justifying relief from the operation of the judgment.  The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment...was entered.[13]

Subsection (4) of this rule embodies the principle that in federal court, a "defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds."[14]

1.   Louisiana Statute Does Not Apply

To counter the federal jurisprudence that expresses this principle, the Jacksons argue on appeal that, under a Louisiana

---

[13]FED. R. CIV. P. 60(b) (emphasis added).

[14]Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 706 (1982).

10

statute,[15] jurisdiction over a person is conclusively established if the person fails timely to file a declinatory exception. The Jacksons seem to assume that this Louisiana statute applies in federal district court. Not necessarily. As we clarified last year in Harper Macleod,[16] when a state rule of preclusion would operate to undermine a federal default-judgment defendant's ability to contest personal jurisdiction in federal enforcement proceedings, the state rule must yield to Rule 60(b)(4).[17] In Harper Macleod we rejected a judgment creditor's assertion of Texas law, holding that Texas law did not control: The principle that a party may silently suffer a default judgment and later challenge personal jurisdiction is a "foundational principle of federal jurisdictional law."[18] Our precedent requires that we reject the Jacksons' contention that Louisiana's rule of jurisdictional preclusion governs this appeal.

2. Waiver

The Jacksons also urge that Fratelli Tanfoglio waived any right it may have had to object to personal jurisdiction by failing

---

[15]LA. CODE CIV. PROC. ANN. art. 6(A)(3) (West 1999).

[16]Harper Macleod Solicitors v. Keaty & Keaty, 260 F.3d 389 (5th Cir. 2001).

[17]Like the Harper Macleod court, we "need not determine whether a different state law could be used as the federal rule for determining the preclusive effect of jurisdictional findings made by a federal court sitting in diversity." Harper Macleod, 260 F.3d at 397 n.10.

[18]Id. at 397 & n.9.

11

to appear.  Whatever the validity of this notion under Louisiana law, it is against all federal authority.  True, a party's right to object to personal jurisdiction certainly is waived under Rule 12(h) if such party fails to assert that objection in his first pleading or general appearance.[19]  But a party's right to contest personal jurisdiction is not waived by his failure to appear at all.[20]  "It is well-established [sic] that defendants need not appear in a federal court without authority to exercise personal jurisdiction over them to raise a jurisdictional defect."[21]  The Jacksons' waiver argument fails.

3.  <u>Unreasonable Delay</u>

The Jacksons' contention that Fratelli Tanfoglio cannot make

---

[19]<u>See</u> <u>Patin</u>, 294 F.3d at 653; <u>Broadcast Music, Inc. v. M.T.S. Enterprises, Inc.</u>, 811 F.2d 278, 281 (5th Cir. 1987) ("[Defendants] never filed a pleading in the case prior to the entry of default judgment.  Therefore, it cannot be said that they failed to raise the defense [of personal jurisdiction], as required by Rule 12(h), in their first pleading.").

[20]<u>Hazen Research, Inc. v. Omega Minerals, Inc.</u>, 497 F.2d 151, 154 (5th Cir. 1974) (citations and internal quotation marks omitted):
> In those case [sic], however, in which the defendant makes no appearance and the judgment goes by default, the defendant may defeat subsequent enforcement in another forum by demonstrating that the judgment issued from a court lacking personal jurisdiction.  Of course, the burden of undermining [the judgment] rests heavily upon the assailant, and, should the attack fail, the default judgment becomes no less final and determinative on the merits of the controversy than a decree entered after full trial.

[21]<u>Harper Macleod</u>, 260 F.3d at 393 (quoting <u>Insurance Corp. of Ireland</u>, 456 U.S. at 706, and citing <u>Broadcast Music</u>, 811 F.2d at 281).

a Rule 60(b)(4) motion nearly two years after suffering the default judgment runs into similar difficulties. This contention is counter to logic, which compels the conclusion that —— at least absent extraordinary circumstances —— the mere passage of time cannot convert an absolutely void judgment into a valid one.[22] This is one reason for our having held that there is no time limit on Rule 60(b)(4) motions, and that the doctrine of laches has no effect.[23] As a general rule, the fact that such a motion is made

---

[22]Bludworth Bond, 841 F.2d at 649 n.6 ("[T]here seems to be universal agreement that laches [in bringing a Rule 60(b)(4) motion] cannot cure a void judgment, and no court has denied relief under Rule 60(b)(4) because of delay.").

[23]Carter, 136 F.3d at 1006:
Motions brought pursuant to Rule 60(b)(4), however, constitute such exceptional circumstances as to relieve litigants from the normal standards of timeliness associated with the rule. While Rule 60(b)(1) motions must be brought within one year, we have held that motions brought pursuant to subsection (4) of the rule have no set time limit. This court has explained that "'[t]here is no time limit on an attack on a judgment as void. The one-year limit applicable to some Rule 60(b) motions is expressly inapplicable, and even the requirement that the motion be made within a "reasonable time," which seems literally to apply to motions under Rule 60(b)(4), cannot be enforced with regard to this class of motion.'" New York Life Insurance Company v. Brown, 84 F.3d 137, 142–43 (5th Cir. 1996 (quoting Briley v. Hidalgo, 981 F.2d 246, 249 (5th Cir. 1993)).
See also Orner v. Shalala, 30 F.3d 1307, 1310 (10th Cir. 1994); Katter v. Arkansas Louisiana Gas Co., 765 F.2d 730, 734 (8th Cir. 1985); Austin v. Smith, 312 F.2d 337, 343 (D.C. Cir. 1962); Von Dardel v. Union of Soviet Socialist Republics, 736 F. Supp. 1, 4 n.8 (D.D.C. 1990); Ruddies v. Auburn Spark Plug Co., 261 F. Supp. 648, 658 (S.D.N.Y. 1966) ("A void judgment can acquire no validity because of laches on the part of one who applies for relief from it."); 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2862 at 324–25 (2d ed. 1995):
[T]here is no time limit on an attack on a judgment as

13

long after the entry of a default judgment should not be an obstacle to the jurisdictional inquiry.[24]  Fratelli Tanfoglio's motion was not barred by the time that elapsed prior to its being filed.

4.    The Magness Balancing Test Does Not Apply

The district court reached the merits of the motion and assessed them by employing the eight-factor balancing test that we laid down in Magness v. Russian Federation.[25]  Our precedents demonstrate that here the court's reliance on Magness was legal error.  The Magness balancing test is appropriate when Rule 60(b) motions are based on such reasons as mistake or inadvertence and thus call for a weighing of equities.  It is never the appropriate test when the movant proceeds under Rule 60(b)(4) and urges that the judgment is void.  "When...the motion is based on a void judgment under rule 60(b)(4), the district court has no

---

void.  The one-year limit applicable to some Rule 60(b) motions is expressly inapplicable, and even the requirement that the motion be made within a "reasonable time," which seems literally to apply to motions under Rule 60(b)(4), cannot be enforced with regard to this class of motion.  A void judgment cannot acquire validity because of laches on the part of the judgment debtor.
See also 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2698 at 164 (3d ed. 1998) ("When the ground for setting aside a default judgment is found to be within Rule 60(b)(4)——the judgment is void——it has been held that there is no time limit that will bar relief."); id. at 164 n.2 (collecting cases).

[24]Carter, 136 F.3d at 1006.

[25]247 F.3d 609, 618–19 (5th Cir. 2001).

14

discretion——the judgment is either void or it is not."[26]  If the judgment is void, "the district court <u>must</u> set it aside."[27]

C.    <u>Issue Preclusion</u>

Perhaps the Jacksons' best argument is one that relates to the oddest aspect of this case:  To prove that the judgment was void for lack of personal jurisdiction, Fratelli Tanfoglio raises an assertedly meritorious defense (identity of the pistol's manufacturer) that the district court's default judgment on the merits had flatly rejected.  Because the identity of the pistol's manufacturer has ramifications for both jurisdiction and the merits, the "foundational principle" embodied in Rule 60(b)(4) collides head-on with a well-established rule of claim preclusion. In general,

> [a]ttempts by a defendant to escape the effects of his default should be strictly circumscribed: he should not be given the opportunity to litigate what has already been considered admitted in law.  The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.  A default judgment is unassailable on the merits....[28]

The Jacksons urge that their default judgment conclusively establishes well-pleaded facts, including the identity of the

---

[26]<u>Recreational Properties</u>, 804 F.2d at 314; <u>see also</u> <u>Magness</u>, 247 F.3d at 619 n.19.

[27]<u>Bludworth Bond</u>, 841 F.2d at 649 (citations omitted and emphasis original).

[28]<u>Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank</u>, 515 F.2d 1200, 1206 (5th Cir. 1975) (citations omitted).

15

pistol's manufacturer, and that those facts cannot be re-examined under Rule 60(b)(4). The district court accepted this reasoning.

As support for this proposition, both the Jacksons and the district court looked to general language in a treatise,[29] without pointing to other passages of the same work that shed a different light on the proposition.[30] They also relied on broad language in two of our opinions without acknowledging that each opinion recites a more generalized version of this preclusion rule, and that in neither case did we apply that rule in the context of Rule 60(b)(4).

One of these cases, <u>United States v. Shipco General, Inc.</u>,[31] dealt with preclusion at an earlier stage of the default-judgment process, and did not turn on jurisdiction at all. We did observe there that "[a]fter a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding

---

[29]10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2688 at 58–59 & n.5 (3d ed. 1998) ("If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."). <u>See also</u> <u>id.</u> § 2684 at 29 ("When a judgment by default is entered, it generally is treated as a conclusive and final adjudication of the issues necessary to justify the relief awarded.").

[30]<u>See</u>, <u>e.g.</u>, <u>id.</u> § 2682 at 14 & n.4 (3d ed. 1998) ("Before a default can be entered, the court must have jurisdiction over the party against whom the judgment is sought."); <u>id.</u> § 2695 at 131 ("[W]hen the court fails to establish personal jursidiction over defendant, any judgment rendered against him will be void.").

[31]814 F.2d 1011 (5th Cir. 1987).

16

damages,"[32] and we neglected to mention personal jurisdiction as another exception.  But as jurisdiction was not at issue in Shipco, the quoted passage is dictum with respect to the instant case.

The other case, Nishimatsu Construction Co., Ltd., v. Houston Nat'l Bank,[33] is of limited relevance here, for two reasons.  First, in that case, the default-judgment debtor, after sitting out the trial, appealed the default judgment directly and therefore did not need to file a Rule 60(b) motion.  Second, and more importantly, we did recite the rule that the "defendant, by his default, admits the plaintiff's well-pleaded allegations of fact," is precluded from challenging those facts by the judgment, "and is barred from contesting on appeal the facts thus established."[34]  But this was written in the merits section of the opinion and was not meant to preclude the defendants' arguing that the district court lacked subject-matter jurisdiction.  In fact, we agreed in part with one defendant's contention on that point and determined that the judgment against him was in part "void for want of subject matter jurisdiction."[35]  Thus, rather than supporting the Jacksons and the district court here, Nishimatsu merely stands for the universal rule that objections to subject-matter jurisdiction cannot be

---

[32]Id. at 1014.

[33]515 F.2d 1200 (5th Cir. 1975).

[34]Id. at 1206 ("A default judgment is unassailable on the merits.").

[35]Id. at 1205.

17

waived; it does not stand for the principle that objections to personal jurisdiction can be lost in a Rule 60(b)(4) context.

In like manner, Fratelli Tanfoglio proffers dicta from several of our cases which do suggest, as another court has put it, that a "defendant's ability to contest personal jurisdiction should not be lost merely because some of the facts relevant to personal jurisdiction are also relevant to the merits."[36]  The two Fifth Circuit cases relied on by Fratelli Tanfoglio have nothing to do, however, with Rule 60(b)(4); rather, they are concerned with subject-matter jurisdiction, a question that a registering court (and an appellate court, for that matter) has an obligation to answer, on its own motion if necessary.  Furthermore, because these two cases hold that when jurisdictional and merits issues are factually intermeshed, questions about jurisdiction should be referred to the merits, they conceivably could be read against Fratelli Tanfoglio rather in its favor.[37]

_____

[36]Board of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc., 64 F. Supp. 2d 839, 846 (S.D. Ind. 1999), rev'd on other grounds, 212 F.3d 1031, 1039 (7th Cir. 2000).

[37]Spector v. L Q Motor Inns, Inc., 517 F.2d 278, 284 (5th Cir. 1975) (citations omitted):
> The District Court, we believe, should have considered more extensively the merits of the controversy in a plenary hearing in order to insure a proper determination of [subject-matter] jurisdiction. The jurisdictional and substantive issues are factually meshed.  Therefore, decision on the jurisdictional issues is dependent on decision of the merits and should have been reserved until a hearing on the merits.  If the plaintiff prevails on his theory on the merits then he would also prevail on the jurisdictional issue.  It is impossible to decide one

18

Being unable to resolve the instant conflict between these well-established rules of preclusion and personal jurisdiction on our own jurisprudence, we naturally look further afield for guidance. When we do, however, we encounter a paucity of cases in which a Rule 60(b)(4) movant has attacked a merits fact purporting to support due-process amenability to personal jurisdiction. To find such (or similar) cases, we must hark back all the way to the nineteenth century, prior to the adoption of the Federal Rules of Civil Procedure and the institution of the current personal-jurisdiction regime. In that era, we find one hoary Supreme Court case that comes close to resolving the tension that we address today.

In Thompson v. Whitman,[38] a citizen of New York, Whitman, sued Thompson, the sheriff of Monmouth County, New Jersey, in the Southern District of New York.[39] Whitman, the forum resident,

---

without the other.
McBeath v. Inter-American Citizens for Decency Committee, 374 F.2d 359, 363 (5th Cir. 1967):

> [W]here the factual and jurisdictional issues are completely intermeshed the jurisdictional issues should be referred to the merits, for it impossible to decide one without the other.... The question of jurisdiction here, including the existence of a conspiracy and a boycott or secondary boycott and their significant effect on interstate commerce, is so inextricably connected with the merits of the case itself that it was error for the court to determine that it lacked jurisdiction...without affording [the plaintiff] a full opportunity to prove his case on the merits.

[38] 85 U.S. 457 (1873).

[39] Id. at 458 (statement of the case).

19

alleged that Thompson, the non-resident, had seized and taken his (Whitman's) sloop from its situs in the forum state.[40]  Thompson defended by relying on a prior New Jersey judgment in rem against the sloop itself, which vessel justices of the peace of Monmouth County had condemned and ordered sold on the ground that the sloop had been clamming within that county in violation of New Jersey law.[41]  The question before the Supreme Court was "whether the record [of the New Jersey case] produced by the defendant was conclusive of the jurisdictional facts therein contained."[42]  The Court determined that the principal jurisdictional fact — whether the sloop had been seized in Monmouth County — could be attacked collaterally in the New York court:

> [I]f it is once conceded that the validity of a judgment may be attacked collaterally by evidence showing that the court had no jurisdiction, it is not perceived how any allegation contained in the record itself, however strongly made, can affect the right so to question it. The very object of the evidence is to invalidate the paper as a record.  If that can be successfully done no statements contained therein have any force.[43]

Because the New York jury had found that "the seizure was not made within the limits of the county of Monmouth, and that no clams were raked within the county on that day,"[44] the Supreme Court ruled that

---

[40]Id. (statement of the case).

[41]Id. at 458–59 (statement of the case).

[42]Id. at 460.

[43]Id. at 468.

[44]Id. at 469.

"the justices [of Monmouth County] had no jurisdiction, and the record had no validity."[45]  Having held the New Jersey judgment to be invalid for want of jurisdiction, the Court did not remark on this result's tension with principles of preclusion, or on whether the New York court permissibly re-examined the merits of the New Jersey judgment.

Thompson is distinguishable from the instant case on several grounds, however.  First, the New Jersey judgment was in rem, rather than in personam, albeit this distinction evidently did not strike the Thompson Court as particularly meaningful.[46]  Second, Thompson had a full-faith-and-credit posture, unlike the instant case, in which Fratelli Tanfoglio has brought a jurisdictional challenge not collaterally, but directly in the rendering court. Under our Rule 60(b)(4) jurisprudence, this distinction actually militates in favor of entertaining the jurisdictional argument.[47]

In a number of other cases, the Supreme Court has applied the principle that the personal jurisdiction of the default-judgment rendering court may always be attacked by the default-judgment debtor in the registering court.  Nevertheless, of the cases we

---

[45]Id. at 470.

[46]Id. at 466 ("[A] judgment may be attacked in a collateral proceeding by showing that the court had no jurisdiction of the person, or, in proceedings in rem, no jurisdiction of the thing.").

[47]Harper Macleod, 260 F.3d at 394 ("Typically, relief under Rule 60(b) is sought in the court that rendered the judgment at issue.") & n.3 (collecting Fifth Circuit cases on direct challenges).

21

have found, none features a _dually_ significant fact, such as the location of the sloop in _Thompson_ or the identity of the pistol maker here.

Yet many Supreme Court opinions — going back at least as far as _Harris v. Hardeman_,[48] in 1852 — have held that the registering court must inquire into notice and service of process.[49] To similar effect is a line of divorce cases holding that, as a corollary to the personal-jurisdiction exception of the Full Faith and Credit

---

[48] 55 U.S. (14 Howard) 334 (1852).

[49] _Peralta v. Heights Medical Center, Inc._, 485 U.S. 80, 84 (1988) (suit on guarantee of hospital debt) ("[U]nder our cases, a judgment entered without notice or service is constitutionally infirm."); _Mullane v. Central Hanover Bank & Trust Co._, 339 U.S. 306, 314 (1950); _Adam v. Saenger_, 303 U.S. 59, 62 (1938) (merits judgment for conversion of chattels) ("[W]hen the matter of fact or law on which jurisdiction depends was not litigated in the original suit it is a matter to be adjudicated in the suit founded upon the judgment."); _Earle v. McVeigh_, 91 U.S. (1 Otto) 503, 507 (1875) (suits on promissory notes) ("[T]he want of jurisdiction is a matter that may always be set up against a judgment when sought to be enforced."); _Harris_, 55 U.S. at 339 (action on a promissory note):

> [I]t would seem to be a legal truism...that no person can be bound by a judgment, or any proceeding conducive thereto, to which he never was party or privy; that no person can be in default with respect to that which it never was incumbent upon him to fulfil. The court entering such judgment by default could have no jurisdiction over the person as to render such personal judgment, unless, by summons or other process, the person was legally before it.... [A] judgment depending upon proceedings _in personam_ can have no force as to one on whom there has been no service of process, actual or constructive; who has had no day in court, and no notice of any proceeding against him. That with respect to such a person, such a judgment is absolutely void; he is no party to it, and can no more be regarded as a party than can any and every other member of the community.

22

Act, the registering court may always inquire into the domicile of the parties to the divorce.[50]

Our own cases are similar. We have frequently applied the foregoing principles to appeals of Rule 60(b)(4) motions that alleged improper service of process or a lack of notice.[51] In Recreational Properties, Inc. v. Southwest Mortgage Service Corp.,[52]

---

[50]See, e.g., Williams v. North Carolina, 325 U.S. 226, 230 (1945):

> As to the truth or existence of a fact, like that of domicil [sic], upon which depends the power to exert judicial authority, a State not a party to the exertion of such judicial authority in another State but seriously affected by it has a right, when asserting its own unquestioned authority, to ascertain the truth or existence of that crucial fact.

See also id. at 232 ("[T]he decree of divorce is a conclusive adjudication of everything except the jurisdictional facts upon which it is founded, and domicil [sic] is a jurisdictional fact."); German Savings & Loan Society v. Dormitzer, 192 U.S. 125, 128 (1904) ("It is too late now to deny the right collaterally to impeach a decree of divorce made in another State, by proof that the court had no jurisdiction, even when the record purports to show jurisdiction and the appearance of the other party.").

[51]See, e.g., Miner v. Punch, 838 F.2d 1407, 1410 (5th Cir. 1988) ("There being no valid service of process, the default judgment against Proprietors is an absolute nullity and must be vacated."); Auster Oil & Gas, Inc. v. Stream, 891 F.2d 570, 581 (5th Cir. 1990) (Garwood, J., concurring) ("For one to be bound by a judgment in a suit to which it was not a party and of which it had no notice is, to say the least, unusual, if not unconstitutional."). See also Aetna Business Credit v. Universal Decor & Interior Design, Inc., 635 F.2d 434 (5th Cir. Unit A Jan. 1981) (holding, in the context of a direct appeal, that "[i]n the absence of valid service of process, proceedings against a party are void").

[52]804 F.2d 311, 314 (5th Cir. 1986) ("If a court lacks jurisdiction over the parties because of insufficient service of process, the judgment is void and the district court must set it aside.").

for example, we reversed the denial of a Rule 60(b)(4) motion because, when the defendant received the mail containing service of process, he reasonably believed that the envelopes lacked sufficient postage and that postage was due.[53]  Consequently, the defendant was free to refuse delivery, which he did.[54]  We concluded that "[s]ervice of process...was not perfected and the default judgment is void and must be vacated."[55]  One of our later cases relied on <u>Recreational Properties</u> for the principle that when service of process is improper, the default judgment is void, and the district court must grant a Rule 60(b)(4) motion for relief from it.[56]  Other courts have done the same.[57]

Service of process and notice of proceedings, however, are not merits issues; neither is domicile of parties.  No matter how

---

[53]<u>Id.</u> at 314–15.

[54]<u>Id.</u>

[55]<u>Id.</u> at 315.

[56]<u>Carimi v. Royal Carribean [sic] Cruise Line, Inc.</u>, 959 F.2d 1344, 1345, 1349 (5th Cir. 1992).  <u>See also</u> <u>Miner</u>, 838 F.2d at 1410.

[57]<u>Peralta v. Heights Medical Center, Inc.</u>, 485 U.S. 80, 86 (1988):
> The Texas court held that the default judgment must stand absent a showing of a meritorious defense to the action in which judgment was entered without proper notice to appellant, a judgment that had substantial adverse consequences to appellant.  By reason of the Due Process Clause of the Fourteenth Amendment, that holding is plainly infirm.

<u>See also</u> 10A WRIGHT, MILLER, & KANE, FEDERAL PRACTICE & PROCEDURE § 2682 at 14 & n.4 (3d ed. 1998) (collecting cases).

strongly cases on these issues may state the rule that a registering court may inquire into the personal jurisdiction of a rendering court, they do not necessarily control the instant situation, in which the district court found, on the merits, a fact that Fratelli Tanfoglio now seeks to undermine, so as to defeat jurisdiction.

We conclude, nevertheless, that the logic of the service and notice cases, of the domicile cases, and of <u>Thompson</u> should apply equally here. We do so not so much because the precedents compel this result, but because we judge that —— at least given the conflict here between the federal rules governing jurisdiction on the one hand and <u>res judicata</u> on the other[58] —— in this case, the protections of personal jurisdiction must trump the doctrine of claim preclusion. This result rests on at least two justifications.

---

[58]"We apply federal law to the question of the *res judicata* or collateral estoppel effect of prior federal court proceedings, regardless of the basis of federal jurisdiction in either the prior or the present action." <u>Avondale Shipyards, Inc. v. Insured Lloyd's</u>, 786 F.2d 1265, 1269 n.4 (5th Cir. 1986). The applicability of this choice-of-law rule to this case is not imperiled by <u>Semtek Int'l, Inc. v Lockheed Martin Corp.</u>, 531 U.S. 497, 505–09 (2001) (holding that the federal common law of preclusion incorporates state law), because a federal court of registration has a clear interest in ensuring that personal jurisdiction in the rendering federal court (here, the same court) comports with federal due-process standards. As the <u>Semtek</u> Court stated, "[F]ederal reference to state [preclusion] law will not obtain, of course, in situations in which the state law is incompatible with federal interests." <u>Id.</u> at 509.

25

First, "[r]es judicata is very much a common law subject."[59] A judicially-derived principle of preclusion generally must perforce yield to the contrary command of a formal rule such as Rule 60(b)(4).[60]

Second, the res judicata doctrine protects private and public values — such as repose, finality, and efficiency — that are important, but have not yet found much expression as constitutional principles, at least in the civil context.[61] It appears that the Supreme Court has only once adverted, and then obliquely, to the possibility that due process might prevent the relitigation of

---

[59]18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 4403 at 35 (2d ed. 2002); id. § 4403 at 35 n.22 (collecting cases).

[60]Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n, 814 F.2d 358, 364 (7th Cir. 1987) (citations omitted):
> The rules that govern the extent to which one judgment in a federal case precludes litigation in a second case are part of the federal common law. Issue preclusion is made available when it is sound to do so in light of the effects on the rate of error, the cost of litigation, and other instrumental considerations. When there are good reasons to allow relitigation..., preclusion does not apply.
> ....Under the Rules Enabling Act, 28 U.S.C. § 2072, the Rules of Civil Procedure have the effect of statutes. A development in the common law of judgments is not a reason to undo a statute.

[61]18 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE § 4403 at 35 ("Courts have identified these fundamental policies and elaborated them into detailed rules of res judicata almost entirely on their own, with little meaningful guidance from statutes or constitutional provisions."). In the criminal context, by contrast, issue preclusion — in the form of the prohibition on double jeopardy — has developed as a constitutional principle.

matters already decided.[62]  We ourselves do not appear ever to have contemplated this possibility.  Whatever due-process theory might require, current due-process doctrine concerns itself only minimally, if at all, with preserving any property right that the Jacksons may have acquired through their default judgment.  Due-process doctrine is far more concerned with protecting the ability of a party like Fratelli Tanfoglio to contest a rendering court's power to bind it to a judgment in the first place.

The fact that one of the principles in tension here is a development of the jurisprudence, and the other is a constitutional value, may partly be a matter of historical contingency rather than logic or principled theory.  But that is nonetheless the state of the law, and we must apply it as we find it.

D.  General Jurisdiction?

The state of the law also requires that our review of this case now turn from specific personal jurisdiction to the possibility of general personal jurisdiction.

Aside from the question who made and distributed the defective pistol, the district court's jurisdictional analysis described many contacts by Fratelli Tanfoglio with the United States firearms market in general and some contacts with Louisiana in particular ——

---

[62]Goldblatt v. Hempstead, 369 U.S. 590, 597 (1962) ("The claim that rights acquired in previous litigation are being undermined is completely unfounded....  We therefore do not need to consider to what extent such issues would have come under the protective wing of due process.").

the latter including the attendance of firm principals at two gun shows in New Orleans —— but none directly related to the Jacksons' pistol, its acquisition, or its manufacture.  We are not sure in what sense the district court believed these unrelated contacts might be relevant to its jurisdictional inquiry.  Having satisfied itself that Fratelli Tanfoglio could not be heard to argue that it did not manufacture the pistol, the court might have been analyzing, under our stream-of-commerce cases, whether the pistol's presence in Louisiana was foreseeable.[63]

If not, these additional contacts would not have been relevant to specific personal jurisdiction, which can exist only if the particular cause of action being litigated arises from or relates to conduct of the defendant in or vis-à-vis the forum.[64]  (Nothing in the record suggests, for example, that Jackson bought the pistol from Tanfoglio's representatives at the gun shows.)  We must therefore acknowledge the possibility that, without saying so, the district court was holding that Fratelli Tanfoglio was amenable to general personal jurisdiction, even if the firm had nothing to do with making or distributing the pistol here at issue.  We therefore assume arguendo that the court's discussion of these contacts, unrelated to Jackson's acquisition of the gun, implicated general rather than specific personal jurisdiction.

---

[63]See, e.g., Ruston Gas Turbines, Inc. v. Donaldson Co., 9 F.3d 415, 418-19 (5th Cir. 1993).

[64]Id.

To justify general personal jurisdiction, Fratelli Tanfoglio had to have had not just minimum contacts, but continuous and systematic ones.[65] Yet neither the phrase "continuous and systematic" nor any synonymous wording appears anywhere in the district court's opinion; the terms "general jurisdiction" and "general personal jurisdiction" are almost entirely absent as well. We are satisfied that if, on remand, continuous and systematic contacts justifying general jurisdiction are determined to exist, the court will expressly identify them as such.

## III. CONCLUSION

As the jurisdictional allegations and findings supporting the default judgment are not entitled to preclusive effect in the personal-jurisdiction context of Rule 60(b)(4), the district court's denial of Fratelli Tanfoglio's motion was legal error. We are thus constrained to vacate that order and remand the case for further (and adversarial) proceedings, including appropriate discovery, on the issue of personal jurisdiction, whether specific, general, or both.

We are aware that remand may saddle the district court with the arduous task of determining the jurisdictional contacts of each

---

[65]Bearry v. Beech Aircraft Corp., 818 F.2d 370, 374 (5th Cir. 1987) ("When the cause of action does not arise from or relate to the foreign corporation's purposeful conduct within the forum state, due process require that there be continuous and systematic contacts between the State and the foreign corporation to support an exercise of 'general' personal jurisdiction by that forum.") (emphasis in original).

29

of the Tanfoglio firms, and, if necessary, analyzing —— perhaps even under Italian law —— whether any of the defunct Tanfoglio firms' contacts should be imputed to the surviving entity, Fratelli Tanfoglio.  In this endeavor, a recent opinion of ours in <u>Patin v. Thoroughbred Power Boats Inc.</u>[66] may assist by clarifying some of the legal standards involved in an imputation inquiry, should one prove necessary.

We also realize that remand could produce anomalous results. It is at least theoretically conceivable that the district court might, for specific-jurisdiction purposes, find that Fratelli Tanfoglio did not make the pistol or any of its components and cannot be imputed with having done so; and yet, if the court should also determine that <u>general</u> personal jurisdiction does lie as the result of continuous and systematic contacts with Louisiana, the court might conclude that it nevertheless must enforce its judgment against Fratelli Tanfoglio, on the theory that, <u>as a merits fact</u>, the manufacture of the pistol cannot be further litigated.  If remand should indeed produce such a paradox, that would simply be the price for the collision here of two basic principles to which we owe fealty:  that a default judgment is final on the merits, on the one hand, and on the other, that a default judgment always may be challenged for want of personal jurisdiction.  It is the latter rule, embodied in Rule 60(b)(4), that trumps in this appeal; but

---

[66]294 F.3d 640 (5th Cir. June 12, 2002).

the former still has force going forward.

VACATED and REMANDED for further consistent proceedings.